JUDAY, EXECUTOR OF LAST WILL AND TESTAMENT OF PENCE, DECEASED, ET AL. *v.* LANTZ, MYERS.

[No. 18,490. Filed February 18, 1954. Rehearing denied March 31, 1954. Transfer dismissed June 15, 1954.]

*Carl L. Chattin*, of Goshen, for appellants.

*James A. Simpson,* of Goshen, for appellees.

CRUMPACKER, C. J.—John A. Pence, late of Elkhart County, Indiana, died on April 13, 1918, seized of the real estate involved in this proceeding together with other lands. He left a last will and testament disposing of said lands under Item 2 thereof which reads as follows:

> " 'All of the residue of my estate, be the same personal property, real estate or mixed, I will, devise and bequeath as follows:
> " '(a)  Unto my beloved daughter, Pearl L. Darr, the undivided one-half (½) of said residue in fee simple. If, at my death my said daughter should not survive me, then I will devise and bequeath the said one half of said residue of my estate to her child or children, share and share alike.
> " '(b)  The other one-half (½) of the residue of my estate, I will, devise and bequeath over to my son, Samuel O. Pence,—he to have the rents, profits and income thereof during the time that he and his present wife, Fern Pence shall sustain to each other the relationship of husband and wife, and thereafter, if my said son shall survive such relationship, then over to him in fee absolute. If, however, his wife, Fern Pence should survive him sustaining to him the relationship of wife, then on his death I will, devise and bequeath said remaining one half of the said residue of my estate over in fee to my said daughter, Pearl L. Darr, and in the event of her death at said time, over in fee to her child or children, share and share alike.' "

Said will was duly admitted to probate in the Elkhart Circuit Court and on June 9, 1919, Pearl L. Darr, in consideration of a partition of their common interests, executed a deed to Samuel O. Pence conveying her interest in the land in controversy to him subject to the same conditions and provisions as attached to his inheritance under his father's will. Samuel O. Pence and his wife Fern were divorced on November 5, 1921,

and on January 19, 1922, he brought an action in the Elkhart Circuit Court to quiet his title to the lands described in said partition deed which are the identical lands involved in this litigation. He made his sister, Pearl L. Darr, her husband Omer, and their two children, Velma and Vera Darr, defendants thereto. The said Velma and Vera were then unmarried but subsequently became Velma Lantz and Vera Myers. who are the appellees herein. The records of the Elkhart Circuit Court disclose that service was had on all defendants and Pearl, Omer and Vera Darr appeared generally and for answer disclaimed any right, title or interest in the real estate involved. Velma, being a minor, appeared by a guardian *ad litem* who filed answer demanding strict proof of each and every material allegation of the complaint. Said complaint was in general terms and merely alleged that the plaintiff, Samuel O. Pence, is the fee simple owner of the lands described; that the defendants claim title to and an interest in said lands adverse to the plaintiff's rights, which claims are without right and unfounded. Upon these issues the court, on January 31, 1922, entered a decree declaring Samuel O. Pence to be the fee simple owner of said lands and quieting his title thereto against all claims of the defendants which were adjudged to be without right and unfounded. On March 6, 1922, Samuel O. Pence remarried his former wife Fern and lived with her continuously until his death on August 28, 1952, leaving Fern, his widow, as his sole and only heir at law. Pearl L. Darr preceded her brother Samuel in death on June 6, 1944.

On October 29, 1952, the appellees brought the present suit against Fern Pence alleging that, under the terms of their grandfather's will, the said Fern could acquire no interest whatever in the lands involved

through her husband's death and under such circumstances the fee simple title to said lands passed to them, their mother Pearl Darr being then dead. Wherefore they ask that their titles be quieted and set at rest as against any and all claims of the defendant Fern Pence. Before this case was put at issue Fern Pence died and the appellants were duly substituted as parties defendant. They answered in four paragraphs the third and fourth of which went out on demurrer and although such ruling is assigned as error no point of it is made in the appellants' brief and we therefore treat the matter as waived. The first paragraph of answer is in conformity to Rule 1-3 and the second pleads the judgment of January 31, 1922, in bar of this suit. No reply was addressed to this paragraph of answer. Upon trial of these issues the court found for the appellees and entered an appropriate decree from which this appeal stems.

Although the appellees filed no pleading asserting fraud in the procurement of the judgment of January 31, 1922, the court permitted them to introduce evidence, over pertinent objections, having no probative value other than to impeach said judgment for fraud in its procurement and for which purpose it was obviously offered. This was error in two particulars. First, where fraud furnishes the ground for any type of relief it must be set up by special plea alleging facts constituting fraud before evidence tending to prove the ultimate fact will be admitted. *MacAfee* v. *Bending* (1905), 36 Ind. App. 628, 76 N. E. 412. Second, it constituted a collateral attack on the judgment of January 31, 1922. Where the invalidity of a prior judgment is sought to be shown in a subsequent suit by matter extraneous to the record, such attack is collateral and cannot be made

by a party to the former record. *City of Greensburg* v. *Zoller* (1901), 28 Ind. App. 126, 60 N. E. 1007, 3 Ind. Law Journal 566. There seems to be an exception to this rule where the second suit is for the express purpose of vacating or voiding the prior judgment for fraud in its procurement. Such a suit is regarded as a direct attack even though prosecuted by a party to the former record and such record shows no infirmities on its face. *Cotterell, Administrator* v. *Koon* (1898), 151 Ind. 182, 51 N. E. 235. It is obvious that the present case does not fall within this exception.

The Elkhart Circuit Court is a court of general jurisdiction. It had jurisdiction of the subject matter of the quiet title action of 1922 and the record affirmatively shows it had jurisdiction of the parties. Under such circumstances its judgment, even if tainted with fraud, is merely voidable and remains binding on all parties until set aside by a direct proceeding for that purpose. *Owen County Council* v. *State, ex rel.* (1911), 175 Ind. 610, 95 N. E. 253; *Welch* v. *Capital Paper Co.* (1921), 76 Ind. App. 416, 132 N. E. 313. Its judgment is not void unless the infirmity that makes it so appears on the face of the record. *Clark* v. *Hillis* (1893), 134 Ind. 421, 34 N. E. 13; *Larimer* v. *Krau* (1914), 57 Ind. App. 33, 103 N. E. 1102, 105 N. E. 936; *White* v. *Bradfute* (1914), 56 Ind. App. 708, 104 N. E. 60, 104 N. E. 123. We find no infirmities on the face of the record of said judgment and it necessarily follows that it was not subject to collateral attack as a void judgment.

The appellees made two defenses below against the judgment of January 31, 1922, as a bar to this action. First, they say that, as the beneficiaries of an executory devise, they acquired absolutely no assertable interest in the land involved in said

quiet title suit of 1922 until Samuel O. Pence died and then only in the event Fern Pence survived him as his widow and in the further event that their mother Pearl Darr was then dead. That these contingencies occurred long after the judgment upon which the appellants rely and necessarily such judgment is no bar to the assertion of rights subsequently acquired. Second, they say said judgment was procured by fraud and therefore void and of no binding effect on anyone. In the absence of special findings, we cannot say which of these contentions prompted the court's decision and as evidence in support of the fraud issue was wholly improper and its admission erroneous we must assume that the error was harmful.

Judgment reversed and cause remanded with instructions to sustain the appellants' motion for a new trial.

Royse, J., dissents with opinion.

### Dissenting Opinion

Royse, J.—I cannot agree with the majority opinion in this case. I believe it contravenes well-established principles enunciated in prior decisions of this court and the Supreme Court.

Subdivision (b) of Item 2 of the will of John A. Pence, which is the source of this litigation, provides as follows:

> " '(b) The other one-half (½) of the residue of my estate, I will, devise and bequeath over to my son, Samuel O. Pence,—he to have the rents, profits and income thereof during the time that he and his present wife, Fern Pence, shall sustain to each other the relationship of husband and wife, and thereafter, if my said son shall survive such relationship, then over to him in fee absolute. If, however, his wife, Fern Pence, should survive him

sustaining to him the relationship of wife, then on his death I will, devise and bequeath said remaining one-half of the said residue of my estate over in fee to my said daughter, Pearl L. Darr, and in the event of her death at said time, over in fee to her child or children, share and share alike.' "

It is a fundamental rule in the construction of wills that it is the duty of courts to effectuate the intent of the testator as such intention is gathered from the four corners of the will.

It is my opinion the above quoted provision in clear, positive, unambiguous language expresses the intent of the testator that if Fern Pence survived Sam while she was his wife, this property was to go first to Sam's sister and if she had died, then to the appellees herein. In other words this was an executory devise.

In Gavit, Blackstone's Commentaries on the Law (1941 Ed.) pp. 322, 323, such a devise is defined as follows:

"An executory devise of lands is such a disposition of them by will, that thereby no estate vests at the death of the devisor, but only on some future contingency.

. . .

"Such devise, not being a present interest, *cannot be barred by a recovery, suffered before it commences*." (My emphasis.)

In 4, Thompson on Real Property, p. 813, Sec. 2266, it is stated:

"Indestructibility is an essential element of an executory limitation, and upon the happening of the specified event it springs into being, terminating the preceding determinable fee. The first taker has no power to defeat it by any act of his. When a valid executory limitation has been created the first taker has no power to destroy it by common recovery, unless the limitation over is after an

estate tail. An executory limitation differs from a contingent remainder in that the latter may be barred or destroyed by several means, whereas an executory limitation is bound to take effect when the contingency happens, and no fine, recovery, or alteration or sale of the estate after which it is limited will have the effect to prevent its taking effect. 'An executory devise can only be destroyed by a failure of the contingency upon which it is to take effect; and it could not, at the common law, be prevented from taking effect when the contingency happened, either by fine and recovery or in any of the modes by which contingent remainders could be destroyed. The executory devise being indestructible, the determinable quality of the fee of the first taker follows any transfer by him.' "

In the case of *Abernathy* v. *McCoy et al., etc.* (1926), 91 Ind. App. 574, 598, 599 (transfer denied 1930), 154 N. E. 682, this court held that no person can destroy an executory interest merely as such, in another person either by alienation, merger or surrender. See also, *Jones and Another* v. *Miller and Another* (1859), 13 Ind. 337.

Section 56-138, Burns' 1951 Replacement, provides as follows:

"Estates tail are abolished; and any estate which according to the common law, would be adjudged a fee tail, shall hereafter be adjudged a fee simple; and if no valid remainder shall be limited thereon, shall be a fee simple absolute."

"But this is to be noticed; the statute distinguished between a fee simple, and a fee simple absolute. The only possible distinction between the two is that the latter is subject to no conditions subsequent, while the former may be so subject. It seems fair to say that here again the word 'remainder' is used in the sense of 'executory devise' and if that substitute is made the ambiguity is removed. The statute turns all fee tails into fee

simple estates but saves what formerly would have been good as a remainder as an executory interest, to the extent that it is a valid interest." Gavit, Future Interests, Wills and Descent, (1934 Edition), Sec. 58, p. 122.

Conceding without deciding that appellees may have been proper parties in the action of 1922, they certainly were not necessary parties. When that action was commenced and determined appellees herein had no interest in this land which they could then have asserted. At that time Sam Pence and Fern were not married. The record of that case introduced in evidence herein shows that Sam asked for and received a fee simple title. But the title he received by that judgment was defeasible in the event he remarried Fern and she survived him while she was his wife. That happened. Pearl Darr died before Sam, and in my opinion, when Sam died leaving Fern as his widow this property under the will of John A. Pence became the property of appellees.

In 5 C. J. S., p. 72, Sec. 1464, it is stated:

"The appellate court will affirm the judgment, order or decree appealed from if it is sustainable on any legal ground or theory apparent on the record, even though such ground or theory differs from that stated by the trial court to be the basis of its ruling or action. (See authorities cited under notes 62 and 63.)

To the same effect see: *State ex rel. Garn* v. *Board of Election Commissioners of Marshall County* (1906), 167 Ind. 276, 288-289, 78 N. E. 1016; *Central Indiana Railway Company* v. *Wishard* (1917), 186 Ind. 262, 274, 114 N. E. 970; *Abernathy* v. *McCoy et al., supra*, p. 582.

Therefore, on the record herein it seems to me the court could have and probably did find for the appellees because it was the clear intent of the testator that they should have this property in the event Fern was Sam's wife when he died, and that Pearl Darr died prior to Sam's death. When the judgment of 1922 was rendered the likelihood that the contingencies would happen by which they could acquire title to this property was thinner than the hair that held the sword over Damocles. As heretofore indicated, Fern was not then the wife of Sam and Pearl Darr was alive. Hence, appellees at that time had no ascertainable title in this property. Under the authorities cited herein that judgment could not divest them of the title they subsequently acquired through the happenings of the contingencies which the testator had imposed. For this reason appellants could not be and were not harmed by any evidence erroneously admitted in this case in reference to the 1922 proceedings.

Finally, appellants in their brief assert the record herein does not show that in the 1922 action Sam Pence based his title on the provision of his father's will and that it may be he acquired title to this property in some other manner. It is an elemental rule that an adjudication in an action is a determination not only as to what was actually decided therein, *but also as to every other matter which the parties might have litigated. Wilson* v. *Buell* (1888), 117 Ind. 315, 317, 20 N. E. 231; *Mutual Benefit Life Insurance Company* v. *Bachtenkircher, Receiver* (1935), 209 Ind. 106, 114, 198 N. E. 81; *Board of Commissioners of Adams County et al.* v. *State ex rel. Gibson et al.* (1948), 226 Ind. 633, 636, 82 N. E. 2d 891. Under the pleadings in this case, if the title acquired by Sam in that case was based on any other mode of acquisition, it was incumbent on

appellants to show that in this case. They did not do so. I believe the judgment should be affirmed.

NOTE.—Reported in 117 N. E. 2d 382.